DECISION
Before this Court is the Defendants' — V. Scott Follansbee, individually; V. Scott Follansbee, as Trustee of F.K.S.M. Two Nominee Trust; F.K.S.M. Two Nominee Trust; V. Scott Follansbee, as Agent of Cypress Builders, Inc.; Joseph Kashanek, individually; Joseph Kashanek, as Trustee of Canape Realty Trust; Canape Realty Trust; Joseph Kashanek, as Treasurer of Cypress Builders, Inc.; Joseph Kashanek, as Trustee of Cypress Manor Realty Trust; Cypress Manor Realty Trust; Cypress Builders, Inc.; Creative Mortgage Concepts Trust; Franklin S. Davis, individually; Franklin S. Davis as Trustee of Metacom Avenue Realty Trust; and the Estate of Reginald Marden — (Defendants) motion for summary judgment. The plaintiff, Elizabeth D. Lopes (Plaintiff) has filed an objection to the motion.[1]
 Facts/Travel
In 1988, the Plaintiff, Elizabeth Lopes, owned two parcels of real estate relevant to this proceeding. One of the properties was referred to as Cypress Haven, McCabe
Village, a 59-lot subdivision located in Dartmouth, Massachusetts (Massachusetts property). The other property consisted of a waterfront parcel located in Bristol, Rhode Island (Rhode Island property).
In order to complete the development of the Massachusetts property, the Plaintiff sought a loan. The lender, Canape Realty Trust[2], issued a commitment letter for a mortgage loan on October 20, 1988 for the subject properties.[3] The Rhode Island property and the Massachusetts property were to be collateral for the loan. The commitment letter indicated that the Plaintiff's loan request for $1,200,000.00 was approved. The letter further indicated that $48,000.00 in origination fees and $108,000.00 in prepaid interest would be retained from the loan proceeds by the mortgagee. In addition, the commitment letter stated that lots in the 59-lot subdivision would be partially released from the mortgage upon payment of $40,000 each. Finally, the letter indicated that the land in Bristol, Rhode Island would be partially released from the mortgage upon payment of $600,000.00.
Subsequent to the issuance of the commitment letter, the Defendant, Joseph Kashanek (Kashanek), informed the Plaintiff that Kashanek had obtained another mortgage broker, Creative Concepts[4], that would place the commitment and obtain the funding. Creative Concepts then caused V. Scott Follansbee (Follansbee), Trustee of F.K.S.M. Two Nominee Trust[5], to become the lender under the provisions of the commitment letter.[6] On November 21, 1988, the Plaintiff executed a Promissory Note in the amount of $1,480,000.00,[7] in favor of V. Scott Follansbee, Trustee of F.K.S.M. Two Nominee Trust, the mortgagee. The Promissory Note was executed as a sealed instrument. The Plaintiff also executed and delivered one mortgage and security agreement for the Massachusetts property and a separate mortgage and security agreement for the Rhode Island property. To further secure the debt of $1,480,000.00, a collateral assignment of lease or leases and permits was executed and delivered by the Plaintiff, to F.K.S.M. Two Nominee Trust, on the Massachusetts property. The simple annual interest rate upon the loan was 18%, the term of the note was to be six months, and the interest was required to be paid in advance by the Plaintiff.[8] These loan documents were prepared by Follansbee's attorney, Reginald L. Marden (Marden).[9] The loan documents for the Massachusetts property were recorded on November 22, 1988, and the loan documents for the Rhode Island property were recorded on November 23, 1988.
At the time of the execution of the mortgages, it was agreed that as the sub-divided lots were sold, $40,000.00 of the proceeds from the sale of each lot would be used to pay down the $1,480,000.00 loan covering both parcels.[10] However, during this period of time while the Plaintiff owned both the Massachusetts and Rhode Island properties, no sales were consummated; thus, no proceeds were applied to the $1,480,000.00 loan.
Approximately one year later, in what appeared to be deeds in lieu of foreclosure,[11] the Plaintiff deeded the Massachusetts property to the Defendant, Joseph Kashanek, as Trustee of Cypress Manor Realty Trust[12]
and the Rhode Island property to Joseph Kashanek, as Trustee of Metacom Avenue Realty Trust[13]. These deeds were executed by the Plaintiff on November 8, 1989 and recorded in the proper land records registry on November 27, 1989. The deeds recite: "in full consideration of one dollar ($1.00) and assumption of the outstanding mortgage indebtedness to V. Scott Follansbee, as Trustee of F.K.S.M. Two Nominee Trust."
The next day, November 28, 1989, Lopes executed an Estoppel Affidavit, which states:
 That the aforesaid deeds and conveyances were made by the deponent as a result of my request that the said V. Scott Follansbee not proceed to foreclosure sale on the premises, but instead allow the assumption of liability by and these deeds to be delivered to the said Joseph Kashanek, trustee as aforesaid . . . That the aforesaid deeds were absolute conveyances of the title to said premises to the grantee named therein in effect as well as form and were not and are not intended as mortgages, legal, or equitable, trust conveyances, or security of any kind and that possession of said premises has been or shortly will be surrendered to said grantee; That the consideration for and in the aforesaid deeds was the assumption by the grantee of the debts, obligations, costs and charges heretofore existing under and by the virtue of a certain note due on May 20, 1989 and secured by certain mortgages heretofore existing on both premises, given and executed by myself and my husband Earl J. McNeil, as mortgagors, to V. Scott Follansbee, trustee of FKSM Two Nominee Trust as mortgagee dated November 21, 1988 . . .
Subsequent to the execution of the deeds and the estoppel affidavit, some or all of the Defendants[14] elected to continue with the development of the Massachusetts property through Cypress Builders, Inc. . These Defendants borrowed $1,000,000.00 from Andover Savings Bank (Andover) to finance this development. Andover took a mortgage on the Massachusetts property and required a $50,000.00 payment for a partial release on each lot sold. Therefore, for the first 20 lots sold, $50,000.00 of the sale price for each lot went to Andover. The record indicates that partial releases were recorded for each of the 59 lots. The record further indicates that the last house and lot sold in December of 1999.
On March 8, 2001, counsel for Cypress Builders Inc. (Cypress), the holder of the Note[15] sent a letter to Lopes regarding the Rhode Island property.[16] The letter referenced the fact that Kashanek, Trustee of Metacom Avenue Realty Trust, was the grantee in a deed recorded with the land records registry in which Metacom Avenue Realty Trust assumed the obligations under the Note.[17] The letter further stated that since the Metacom Avenue Realty Trust has failed to make payment of its obligations to Cypress, the Note was accelerated and the entire balance of principal and interest under the Note, plus attorneys' fees and expenses was due. As of March 2, 2001, the letter stated, the entire outstanding balance of principal and interest due and payable under the Note was $708,255.80. Additionally, the letter indicated that unless payment in full was made, proceedings to foreclose the mortgage would begin. The letter further indicated that "In the event that there is a deficiency resulting from said foreclosure, proceedings may be instituted against all parties legally liable for the purpose of collecting the same".
On May 10, 2001, Lopes filed a verified complaint with the Court seeking declaratory and equitable relief, including an injunction staying the foreclosure sale of the Rhode Island property and staying the charging of any deficiency debt to the Plaintiff. That same day, this Court heard oral argument regarding a variety of issues, including the motion of the Plaintiff for issuance of a preliminary injunction. On May 14, 2001, this Court entered an order requiring the Defendants to cancel the subject foreclosure and restraining the Defendants from proceeding with a foreclosure sale on the Rhode Island property. On August 21, 2001, the Defendants filed a motion for summary judgment, together with supporting memorandum of law. On August 22, 2001, the Plaintiff filed an objection to the Defendants' motion for summary judgment. On September 13, 2001, the Plaintiff filed a second verified complaint, together with a cross-motion for summary judgment.[18] The next day, September 14, 2001, this Court heard oral argument on the Plaintiff's cross-motion and on the limited issue in the Defendants' motion for summary judgment, as to whether or not the Promissory Note was usurious.[19] After hearing the arguments presented, this Court took the matter under advisement. Subsequently, this Court found that the usury issues in this case were governed by the laws of the Commonwealth of Massachusetts; and that under those laws, the stipulated rate of interest rendered the Note usurious. Moreover, this Court found that under Massachusetts law, the Note is not necessarily void. Finally, this Court found that to the extent that the complaint of the Plaintiff was based on the usurious character of the Note, those counts are barred by the statute of limitations and therefore dismissed. An order to this effect was entered by this Court and filed on June 14, 2002. On January 9, 2003, the Plaintiff filed an amended verified complaint together with an objection and supporting memorandum of law to the Defendants' motion for summary judgment.
The Defendants advance a number of arguments in support of their summary judgment motion. As to Plaintiff's claims that relate to an attempt by the Defendants to collect a deficiency from her, the Defendants aver that they are seeking no such deficiency and are willing to provide the Plaintiff with a release to that effect. The Defendants also argue that the Plaintiff's claim for return of the Rhode Island property has no legal or equitable merit, since the transfer of the deeds was an absolute transaction, terminating both the Plaintiff's interest in the properties, as well as obligations on the underlying loan. The Defendants further argue that the remaining counts of the Plaintiff's complaint have no legal or factual merit and should be dismissed. Accordingly, the Defendants contend that this Court should enter judgment in favor of the Defendants, dismissing all counts of the Plaintiff's complaint.
The Plaintiff, on the other hand, maintains that summary judgment should be denied. The Plaintiff contends that genuine disputes of material fact and law exist between the parties. Specifically, the Plaintiff refers to the assertion that there was an enforceable agreement to return the Rhode Island property to the Plaintiff. Further, the Plaintiff maintains that she was entitled to the benefit of the bargain as articulated in the commitment letter issued by Canape Realty Trust; that is, subsequent to the transfer of the deeds to the Rhode Island and Massachusetts properties, $40,000.00 of the proceeds from the sale of each lot should have been applied against the $600,000.00 required to release the Rhode Island property from the original loan. The Plaintiff also argues that the Defendants have participated in conduct constituting fraud, conspiracy, violations of good faith obligations. Furthermore, the Plaintiff argues that the element of fraud throughout the Defendants' actions operates to toll the statute of limitations. Accordingly, the Plaintiff asserts this Court should deny the Defendants' motion for summary judgment.
 Standard of Review
Super. R. Civ. P. 56 empowers a trial justice, upon proper motion, to enter summary judgment in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, in a proceeding for summary judgment, the court must "examine the pleadings and affidavits in the light most favorable to the nonmoving party to decide whether an issue of material fact exist[s] and whether the moving party [is] entitled to summary judgment as a matter of law." Buonnanno v. Colmar Belting Co., Inc., 733 A.2d 712, 715 (R.I. 1999) (citing Textron, Inc. v. Aetna Casualty and Surety Co.,638 A.2d 537, 539 (R.I. 1994)). The party opposing a motion for summary judgment may not rely upon mere allegations or denials in his or her pleadings. Small Business Loan Fund v. Loft, 734 A.2d 953, 955 (R.I. 1998) (citing Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998)). Rather, "[a] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothers ofCranston, Inc. v. Gelfuso Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v.Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
 Usury
In counts VIII and XVII of the Plaintiff's amended verified complaint, the Plaintiff contends that the usurious nature of the Promissory Note violates various provisions of Rhode Island law. In particular, the Plaintiff argues in count XVII, that even if Massachusetts law were to govern the Promissory Note, Rhode Island law still governs the underlying mortgage and security agreement securing the Note as to the Rhode Island property. Therefore, contends the Plaintiff, because Rhode Island law bars usurious transactions, the mortgage and security agreement securing the usurious Note, including the provision allowing the mortgagee to foreclose, should be declared void.
The Defendants, on the other hand, point out that under Massachusetts law, which governs this issue, the Note and deed in lieu are perfectly legal and are enforceable even if usurious.[20]
On June 14, 2002, this Court entered an order, finding that the usury issues in this case are governed by the laws of the Commonwealth of Massachusetts; that under Massachusetts law, the stipulated rate of interest rendered the Note usurious; that the Note is not necessarily void; and that to the extent that the complaint of the Plaintiff is based on the usurious character of the Note, those counts are barred by the statute of limitations and therefore dismissed. This Court in the instant matter further states that its June 14, 2002 order finding that Massachusetts law governs the transactions pertaining to the usury issues in this case controls. Specifically, this Court finds that while the mortgage and security agreement for the Rhode Island property is subject to Rhode Island law as to rights and remedies of the mortgagee, that this mortgage is simply the security for the underlying loan which this Court has heretofore determined to be governed by the laws of the Commonwealth of Massachusetts. Accordingly, Counts VIII and XVII of the Plaintiff's amended complaint are dismissed.
 March 8, 2001 Letter
ST On March 8, 2001, counsel for the holder of the mortgage on the Rhode Island property sent a notice of intent to foreclose to persons in the chain of title, including the Plaintiff. In the body of this letter, counsel wrote, "In the event that there is a deficiency resulting from said foreclosure, proceedings may be instituted against all parties legally liable for the purpose of collecting the same". In Count I of the complaint, the Plaintiff alleges that the Defendants have breached their contract with the Plaintiff by demanding payment for debts secured by the subject properties that were deeded in lieu of foreclosure.
The Defendants respond by averring that they are not demanding payment from Plaintiff and will in fact provide the Plaintiff with a release to that effect.
Therefore, this Court finds that no genuine issue of material fact exists as to an alleged demand for payment. Accordingly, summary judgment shall enter for the Defendants as to Count I of the Plaintiff's amended verified complaint, conditioned upon the Defendants' filing with the Court an appropriate stipulation releasing the Plaintiff from any alleged deficiency judgment in connection with this matter.
Also stemming from the March 8, 2001 letter, the Plaintiff alleges in Count IV of the complaint that the Defendants have maliciously perverted the use of the legal process by maliciously seeking to foreclose, through a fraudulent foreclosure process, and thereby obtain a deficiency judgment, upon a debt that they know has already been satisfied. The Defendants, as indicated above, have declared that they are seeking no such deficiency judgment. Therefore, this Court finds that no genuine issue of material fact exists as to a potential deficiency judgment. Accordingly, summary judgment shall enter for the Defendants as to Count IV of the Plaintiff's amended verified complaint, also conditioned upon the Defendants' filing with the Court an appropriate stipulation releasing the Plaintiff from any alleged deficiency judgment in connection with this matter.
 Fraud and the Agreement
Woven throughout the complaint of the Plaintiff, and contained in many of the counts, is reference to and reliance on an "agreement" between the Plaintiff and the Defendants. According to the Plaintiff, this agreement had two components. First, argues the Plaintiff, the Defendants agreed to return the Rhode Island property to the Plaintiff. Second, maintains the Plaintiff, the Defendants agreed to apply $40,000.00 from the proceeds of the sale of the Massachusetts property lots against the $600,000.00 required to release the Rhode Island property from the original loan.
The Defendants deny that any such agreement exists.
The Plaintiff's amended verified complaint contains a tapestry of allegations of varying combinations of deceit, fraud and conspiracy on the part of the Defendants, together with a repeated reference to an "agreement," allegedly breached, between the Plaintiff and the Defendants. Nowhere in the Plaintiff's complaint, nor in the Defendant's motion for summary judgment, is there so much as a clue as to what this purported "agreement" was. The Plaintiffs apparent position is that by repeating the mantra of an alleged "agreement," that an enforceable agreement will be implied by the Court. The Defendants summarily deny the existence of the alleged "agreement," without going out of their way to mention what the agreement was about. The Defendants also failed to supply the Court with a single affidavit in support of this denial. In fact, the Defendants failed to supply the Court with a single affidavit in support of any denial or assertion they make in their motion for summary judgment. Rather, it is only in the penultimate sentence in the objection filed by the Plaintiff to the motion for summary judgment, that the Plaintiff, now indignant in the face of the Defendants' denial, references the commitment letter as the apparent source of the "agreement."
According to Super. R. Civ. P. 56, a trial justice, upon proper motion, is empowered to enter summary judgment in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In the instant matter, this Court was required to sort through the sometimes vague and frequently circular allegations posed by the Plaintiff, in the face of a motion for summary judgment that was both witty and clever, but also bereft of reference to either relevant legal authority or helpful references to the record. Notwithstanding papers filed by competent counsel for both the Plaintiff and the Defendants, this Court was forced to embark on its own journey of legal research to attempt to resolve the issues raised by the Defendants' motion for summary judgment.
To begin with, this Court finds that Massachusetts law governs in the instant matter. The Plaintiff alleges claims sounding in both contract and in tort. First, absent an exception to the contrary, a cause of action in a contract case accrues when the breach of contract occurs. Mass. Prac. Vol. 9, Pt. 5, Ch. 15, § 316. Most contract actions must be commenced within six years of the breach. Id. Alternatively, in most actions of tort, the cause of action accrues when the injury or damage is sustained and the action must be commenced within three years of such accrual. Mass. Prac. Vol. 9, Pt. 5, Ch. 15, § 319. However, this Court notes that Massachusetts has seen fit to carve out an exception to the general limitations of actions. Specifically, Mass. Gen. Laws Ann. ch. 260 § 12 (1992) provides that "if a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."
In the instant matter, this Court finds that the record contains evidence, at least in the allegations made in the verified amended complaint filed by the Plaintiff, that the Defendants have acted fraudulently in transactions conducted with the Plaintiff. With the relevant Massachusetts statute in mind, this Court finds that the allegations made by the Plaintiff with regard to fraudulent conduct on the part of the Defendants are not barred by the statute of limitations. This Court also finds that a genuine issue of material fact exists as to whether there was an alleged agreement, whether it was enforceable, as well as to all counts alleging fraudulent conduct by the Defendants. Accordingly, this Court will deny the Defendants' motion for summary judgment as to counts II, III, V-VII, IX-XV, and XVIII of the Plaintiff's amended verified complaint.
 Good Faith
The Plaintiff argues that the actions of the Defendants in the various loan transactions relating to the Plaintiff's Rhode Island and Massachusetts properties, demonstrate a lack of good faith as required by the mortgage and security agreement between the parties.
The Defendant simply denies that there has been any lack of good faith on the part of the Defendants.
Therefore, this Court finds that a genuine issue of material fact exists as to allegations relating to good faith obligations. Accordingly, summary judgment shall be denied as to Count XVI.
 Conclusion
Summary judgment will be granted when this Court finds that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, this Court finds that summary judgment should be granted for the Defendants as to counts I and IV, conditioned upon the Defendants' filing with the Court an appropriate stipulation releasing the Plaintiff from any alleged deficiency judgment in connection with this matter. This Court also finds that summary judgment should be granted for the Defendants as to counts VIII and XVII of the amended verified complaint, and should be denied as to all other counts.
This Court further directs that counsel for the Plaintiff (who found it necessary to file an amended verified complaint with over 260 numbered paragraphs setting forth 18 separate counts) file a second amended verified complaint, consistent with the provisions of Super. R. Civ. P. 8(a).
Counsel shall submit an appropriate order and judgment for entry.
[1] On May 14, 2001, this action was consolidated with C.A. No. PC2001-2015, entitled Jean B. Vitali v. Cypress Builders, Inc., V. Scott Follansbee, Joseph Kashanek, and Franklin S. Davis. On January 6, 2003, a stipulation was filed with the Court, settling this matter as it pertained to the plaintiff Jean B. Vitali.
[2] Canape Realty Trust dated November 15, 1982 is recorded in Bristol, Rhode Island Records of Land Evidence with Joseph Kashanek as Trustee. The beneficiaries are Joseph Kashanek and V. Scott Follansbee.
[3] While neither the Plaintiff nor the Defendants challenge the fact that the Plaintiff accepted the commitment letter, the record before this Court contains a commitment letter unsigned by the Plaintiff. Whether the Plaintiff signed the letter at any time is not referenced by either party and is unknown to the Court. However, in the absence of a challenge to acceptance, this Court will treat the commitment letter as having been accepted by the Plaintiff.
[4] Creative Concepts, a named Defendant, is a trust within which Defendant Joseph Kashanek is the sole beneficiary.
[5] F.K.S.M. Two Nominee Trust, dated November 21, 1988 is recorded in Bristol, Rhode Island Records of Land Evidence with V. Scott Follansbee as Trustee. The beneficiaries of the trust are Franklin S. Davis, Reginald L. Marden, and Joseph Kashanek.
[6] The only commitment letter contained in the record and referred to by the parties is the commitment letter issued by Canape Realty Trust on October 18, 1988.
[7] The Court notes that the commitment letter issued by Canape Realty Trust on October 20, 1988 indicated that the amount of the loan was $1,200,000.00. The record does not contain any reference as to why the Promissory Note, executed on November 21, 1988, was in the amount of $1,480,000.00. The difference between the commitment and the loan amount is unexplained.
[8] The interest was increased to 20% for late payments. All interest was payable in advance together with four points (eight points annualized). The Plaintiff was required to pay in advance an additional two points as a finder's fee to the Defendant, Creative Mortgage Concepts. In total, the Plaintiff was required to pay $44,400.000 as six points, (the four points plus the two points for finder's fee) from the closing, on what was intended to be a six month loan. The required points increased the amount of the total interest collected on the loan interest to in excess of 24%.
[9] Reginald L. Marden, in addition to acting as Follansbee's attorney and preparing the loan documents, was a named beneficiary of the F.K.S.M. Two Nominee Trust.
[10] In the Plaintiff's objection to the Defendants' motion for summary judgment, the Plaintiff refers to the agreement as being memorialized in the commitment letter issued by Canape Realty Trust.
[11] This Court notes that a "deed in lieu of foreclosure" is typically one in which the mortgagor deeds the subject property back to the mortgagee, in lieu of foreclosure. In the absence of any intervening mortgage, this transaction results in the merger of the fee interest with the mortgage, giving the original mortgagee the fee ownership, while extinguishing any obligation of the mortgagor on the original mortgage. On the other hand, when the same transaction is to occur in a situation with an intervening mortgage, the mortgagee would take the fee interest, but it would be subject to the intervening mortgage. In the instant matter, there was, in fact, an intervening mortgage held by Jean B. Vitali (originally a plaintiff in this action as originally consolidated). Therefore, in structuring this transaction, the Defendants arranged for Plaintiff Lopes to deed her property NOT back to the original mortgagee, but rather to a separate entity now known to be affiliated with the mortgagee. The original mortgagee was F.K.S.M. Two Nominee Trust. The Plaintiff deeded the Rhode Island property to Metacom Avenue Realty Trust and deeded the Massachusetts property to Cypress Manor Realty Trust. The beneficiaries for all three trusts are now known to be Follansbee, Kashanek, and Franklin S. Davis (Reginald Marden is also a beneficiary of the F.K.S.M. Two Nominee Trust). Thus, because in the case at bar, the mortgagor (Plaintiff) did not deed the subject properties back to the mortgagee (she deeded the properties to trusts in which the beneficiaries were the same as the beneficiaries of the mortgagee trust), this Court treats the deed transaction as a transaction in the nature of a deed in lieu of foreclosure, rather than a traditional deed in lieu of foreclosure. Often, a transaction such as this is structured so as to keep the original mortgage as a buffer against an intervening or junior mortgage or lien position.
[12] The Trustee for Cypress Manor Realty Trust is Kashanek, and the beneficiaries are Follansbee, Kashanek, and Franklin S. Davis.
[13] According to the Plaintiff's amended verified complaint, both Kashanek and Franklin S. Davis are named Trustees for Metacom Avenue Realty Trust, and the beneficiaries are Kashanek, Franklin S. Davis, and Follansbee. This Court notes that Franklin S. Davis as Trustee of Metacom Avenue Realty Trust is named as a Defendant in this matter. This Court further notes that Joseph Kashanek, Trustee of Metacom Avenue Realty Trust is the entity named in the deed of the Rhode Island property to whom Lopes made the transfer at issue in this case.
[14] According to the Plaintiff's objection to Defendants' motion for summary judgment (the memorandum contains no page numbers, but this Court is referring to the third page), the "Defendants" who borrowed $1,000,000.00 from Andover include Kashanek, Follansbee, Marden, and Stan Davis. (This Court assumes that "Stan Davis" is the same person otherwise referred to as "Franklin S. Davis". It is unclear from the record whether any of the other eleven named defendants were also actual borrowers on this loan.
[15] Apart from the statement in the March 8, 2001 letter, indicating that Cypress Builders, Inc. was the holder of the note, the only other reference in the record to the holder of the note changing ownership is contained in the Plaintiff's objection to Defendants' motion for summary judgment, in which the Plaintiff states (on the eleventh page) "The defendants, now acting as Cypress Manor Realty Trust, Joseph Kashanek, Trustee, then convey the Dartmouth property lots to Cypress Builders, Inc., V. Scott Follansbee, President, to Mrs. Kashanek, to Joseph Kashanek individually, etc. . and each of the above participants in the construction of 59 houses on 59 of the lots."
[16] Apparently, the March 8, 2001 letter was sent to all persons in the chain of title to the Rhode Island property, which included Lopes.
[17] This deed is the same deed referenced earlier, in which the Plaintiff executed what appeared to be a deed in lieu of foreclosure, granting the Rhode Island property to Kashanek, as Trustee of Metacom Avenue Realty Trust, in consideration of one dollar and assumption of the outstanding mortgage indebtedness to Follansbee, as Trustee of F.K.S.M. Two Nominee Trust.
[18] The cross-motion for summary judgment filed by Lopes was limited to the single issue as to whether the Promissory Note dated November 21, 1988 was usurious.
[19] Oral argument on September 14, 2001, was limited to the single issue as to whether the Promissory Note dated November 21, 1988 was usurious. This was the single issue presented by the entirety of the Plaintiff's cross-motion for summary judgment, and it was the singular issue extracted from the series of issues raised in the Defendants' motion for summary judgment. The balance of issues in the Defendants' motion for summary judgment was reserved for a subsequent hearing.
[20] This Court notes that on August 21, 2001 the Defendants filed their motion for summary judgment. On September 13, 2001, the Plaintiff filed a second verified complaint. On September 14, 2001, this Court heard oral argument on the usury issue. On June 14, 2002, this Court entered an order, finding that the usury issues in this case are governed by the laws of the Commonwealth of Massachusetts; that under Massachusetts law, the stipulated rate of interest rendered the Note usurious; that the Note is not necessarily void; and that to the extent that the complaint of the Plaintiff is based on the usurious character of the Note, those counts are barred by the statute of limitations and therefore dismissed. Approximately six months later, the Plaintiff filed an amended verified complaint, containing two counts arising out of usury violations. The Plaintiff has appealed from the entry of partial summary judgment contained in the June 14, 2002 order. This appeal currently is pending in the Rhode Island Supreme Court.